MOODY ET AL. *v.* THE STANDARD WHEEL COMPANY.

[No. 2,486.    Filed June 16, 1898.]

SALES.—*Contracts.—Orders.—*Plaintiff sued defendant for the value of a car load of spokes. It was found by the special verdict that plaintiff sold defendant a car load of spokes in 1895, and another in 1896, which were paid for. A short time after the latter sale plaintiff wrote defendant, "We have a car load of spokes on hand now. If you want them, send a man over and take them up, and we will pay his car fare to Ft. Wayne. Let us hear from you by return mail." Defendant replied, "Your favor of the 28th inst. is received, but, as we are chuck full of cheap spoke stock, we will not be able to use yours just now. We think, however, that we can do so after September 1st." About a month thereafter defendant wrote plaintiff that owing to a depression in business they would discontinue all purchases of wheel material. "and will not accept any after September 1, 1896. If you have any stock manufactured upon our order, please deliver same before that date." *Held,* that the correspondence did not amount to a sale nor show that plaintiff had a standing order of sale. *pp. 423-427.*

SPECIAL VERDICT.— *Practice.—Contracts. —Sales.—*It is the duty of the jury in an action on a contract of sale to find in the special verdict the facts in relation thereto, and it is for the court to say whether a contract was entered into. *p. 425.*

From the Allen Superior Court. *Affirmed.*

*W. Leonard* and *E. Leonard,* for appellants.

*William P. Breen* and *John Morris, Jr.,* for appellee.

Moody *et al. v.* The Standard Wheel Company.

ROBINSON, J.—Appellants sued appellee for the value of certain oak and hickory spokes alleged to have been delivered by appellants to appellee. It appears from the special verdict that appellants had sold appellee a car load of spokes in November, 1895, and another car load in March, 1896; that these were paid for soon after the purchase. Appellants' place of business was in Muncie, and appellee's in Ft. Wayne, Indiana. July 28, 1896, appellants addressed a letter to appellee saying: "We have a car load of spokes on hand now. If you want them, send a man over and take them up, and we will pay his car fare to and from Ft. Wayne. Let us hear from you by return mail." July 29, 1896, appellee addressed a letter to appellants, saying: "Your favor of the 28th inst. is received, but as we are chuck full of cheap spoke stock we will not be able to use yours just now. We think however that we can do so after September 1." August 24, 1896, appellee sent a letter to appellants, saying that owing to depression in business, they would discontinue all purchases of wheel material "and will not accept any on or after Sept. 1, 1896. If you have any stock manufactured upon our order please deliver same before that date." The jury further found that the above letters contain the only negotiations between the parties relating to the purchase of the spokes sued for in this action. It cannot be said that these letters contain any order for or agreement to purchase the material for which suit is brought. The most that can be said from them is an offer to sell by appellants and a refusal to buy by appellees at that time. It is clear from appellants' letter of July 28, that appellee had no standing order for all spokes appellants might ship until September 1, 1896. In December, 1895, appellants acknowledged receipt of pay for the car load shipped in November, and in the

letter say that if appellee can take another load in the near future, appellants think they can get it and ask an answer by return mail.

The spokes in controversy were delivered on board the cars at Muncie, August 29, 1896, and arrived at Ft. Wayne August 31. The jury found that appellee had at all times refused to accept the spokes sued for. The finding of the jury that the letters above referred to contain the only negotiations between the parties relating to the material in question, precludes the idea that there was any oral agreement between them. If the spokes were sold by appellants, it must have been done by virtue of a contract, and such contract must have been either in parol or in writing. And it can not be denied that if the contract was in writing, it was the duty of the jury to state in their verdict what the writing was, and it then becomes the duty of the court to determine from the writing what the agreement was between the parties. The jury state all that passed between the parties on the subject, and the trial court properly concluded that these negotiations between the parties did not amount to a contract on appellee's part to purchase the spokes in controversy.

The answers of the jury that appellee agreed to purchase these spokes at a particular price are not in harmony with the finding that the above letters constitute all the negotiations between the parties. But the jury's conclusion that a sale was made must give way to the specific findings of facts constituting the contract, the construction of which is for the court, and not the jury. When the jury has found the facts, the court must say whether such facts constitute a contract, and if they do, the court must further say what are the rights and duties of the parties with respect to it. The finding does not show that the sale of the car load of spokes in November, 1895, and in March or

Moody *et al. v.* The Standard Wheel Company.

April, 1896, had any connection with the sale of the spokes in question. We are not unmindful of the rule that a special verdict must be treated as an entirety, that nothing can be added to it by inference or intendment, and that the failure to find a fact in favor of the party having the burden is equivalent to finding such fact against him. *Louisville, etc., R. W. Co.* v. *Balch,* 122 Ind. 583; *Pittsburgh, etc., R. R. Co.* v. *Spencer,* 98 Ind. 186; *Louisville, etc., R. W. Co.* v. *Castello,* 9 Ind. App. 462; *Noblesville, etc., Impr. Co.* v. *Loehr,* 124 Ind. 79.

As we have already said, the verdict fails to show that appellee had any standing order for all spokes appellants might ship up to September 1, 1896. The correspondence set out in the verdict cannot be so construed. There was some correspondence as to the kind of material appellee would want, and the prices appellee would be willing to pay, but there is nothing in the way of a general order, and the verdict clearly shows that neither party, throughout their dealings, treated any letters of appellee's as a standing order. The spokes that were delivered and paid for were not delivered under any general order, and such delivery cannot be said to be a part performance of one general contract to take all spokes furnished by appellants up to a certain date.

We are not unmindful of the rule that it is the duty of the jury to find the facts and not simply the evidence. But where a contract is in question, it is the duty of the jury to find the facts, and for the court to say whether a contract was or was not entered into. In the case of *Cottrell* v. *Nixon,* 109 Ind. 378, cited by appellants' counsel, it is said: "It was a fact to be found by the court whether or not the defendant had delivered to the plaintiffs a written promise to pay for the property sold to E. Pleas & Co., if any was sold to

them.   If it had been found that such a contract had been made and delivered to the plaintiffs, and that in consideration thereof the goods had been delivered, the contract might have been made a part of the finding by reference, or by setting it out in the finding." In *Germania Fire Ins. Co.* v. *Columbia, etc., Tile Co.*, 11 Ind. App. 385, cited by appellants' counsel, one of the issues tendered was that notice of a fire loss had been given the company, in writing, within a reasonable time after the loss or that the company had waived the notice.   Instead of finding the ultimate fact that notice had been given, the jury found that certain letters had been written, but it appears that it was not found when any of the letters, except one, were written, nor that they were transmitted or received, nor that notice of the loss was served upon the insurance company through them, or either of them.   In the opinion it is said:   "The letters may have constituted sufficient evidence of such notice, but they were not a finding that notice had in fact been given, nor does the finding contain such fact."   But in the case at bar the jury say that the letters set out in their verdict constitute all the negotiations between the parties concerning the sale of the spokes in question. The question then arises whether these negotiations amount to a contract, and if they do not, it must follow that no sale was made.

It appears that one Wood was the agent of appellee to inspect spokes to be purchased.   One of the appellants was asked what arrangements Wood made with him about selling spokes to appellee, and what he did in the way of purchasing or proposing to purchase lumber and spokes for appellee, and what he said or did in regard to purchasing the first car load shipped to appellee.   An objection to these questions was sustained.   It was not shown that this witness

was the agent of appellee to do anything other than inspect the material. And even if it was error to exclude the evidence, the error was afterwards cured, for the witness testified in answer to questions by appellants' counsel, that at the time in question, "Mr. Wood came to the office. We went to the mill. He looked over the spokes. They were cross-piled and he would pull a spoke out here and there and look at it. We went in the office. He wanted to know what we wanted for them. He wanted to know what we wanted. We asked his price, he said, 'what do you want?' We told what we would take f. o. b. cars Muncie, Indiana. He said it was pretty high." Q. "What was the price?" A. "$6.00 per thousand spokes f. o. b. cars Muncie, Indiana." He left in that way, saying he would talk to them,—the head of the affair,—with the manager, and 'whatever he says, I will write right back;' and in a day or so I received a letter."

As is said by appellants' counsel in their supplemental reply brief, the issue in this case is, whether appellants had sold and· delivered to appellee, at its special instance and request, the material in question. Taking the special verdict as a whole, the trial court did right in answering the question against appellants. There is no error in the record for which the judgment should be reversed. Judgment affirmed.